Good morning, Your Honors. Ready to start. May it please the Court, my name is Daniel Gonzalez and I represent Appellant, Irvine Unified School District in the Consolidated Appeals here. I would like to reserve two minutes of my fifteen minutes for rebuttal. At the heart of this dispute between the parties, Your Honor, is an incongruous finding by the Administrative Law Judge that when the public school district, in this case Irvine Unified School District, taught the student using a curriculum that might be one or more grade levels below what would normally correspond to a typically developing peer, it constituted denial of faith and was improper. However, when the private school that the parents in their student at did the exact same thing, it was considered acceptable. And not only was it acceptable, but under Burlington, required reimbursement by the public school district of that particular placement. This was the issue that was first before the District Court when Irvine first appealed this case to the District Court. And on appeal, the District Court agreed with the District that this finding just didn't make sense. The District Court reviewed the evidence and decided that based on the evidence, including the testimony of the Pelley's own expert, that the definition of what the ALJ called a modified curriculum when the district applied this approach seemed to be the same as what the private school was doing. However, the Administrative Law Judge called that a general education as opposed to a modified curriculum, or general curriculum as opposed to a modified curriculum, and the agreed to remand the case back to the Administrative Law Judge with instructions that, here's the definition of modified curriculum, and can you please take a look at whether, based on this definition, Prentice, or the private school in this particular case, did not also use a modified curriculum with the student. And if you find that it did, what doesn't that mean, or doesn't that go to the second issue here, which is a finding by the Administrative Law Judge that a modified curriculum was improper to use with the student and provided no benefit to them. So that was the issue that went back on remand. On remand, the Administrative Law Judge did not follow the instructions, did not use this definition of modified curriculum, and inexplicably decided to use a new definition that neither of the parties had argued for. And this definition is not any more reliable than what the District Court and the parties had agreed would be the definition moving forward, and actually doesn't... You're saying the District Court and the parties had agreed what the definition would be moving forward, Counsel? Sure. So on some level, Your Honor, the District Court set forward this definition based on the pleadings of the parties and the arguments of the parties, and found that modified curriculum was using curriculum that was a grade level lower or more than what would normally correspond to the students than age. On remand, Pelley's own briefs cited something very similar as to what the standard should be. It was an undefined term. So it's clear from the briefing that people were sort of paraphrasing, but how was there a meaningful difference that changes an outcome here? So how was there a meaningful... I'm sorry, I want to make sure I answer your question,  You said a couple times that the District Court adopted a definition, directed that a definition be used. I don't read the record that way. Okay. So in the Court's definition... I'm sorry, in the Court's original findings, the Court found as defined by students or an expert, a modified curriculum means instruction which is grade level instruction lower than the grade level instruction that corresponds to one's chronological age. And that's how the judge defined it. But you indicated something a little different, counsel. You indicated that the judge directed... What he's doing there is observing, this is what your expert said. Sure. There's a meaningful difference between that and the judge directing you must apply this definition. And then a minute ago you said that the parties and the District Court agreed upon a definition. And I'm not sure that I agree with any of the verbs in those sentences, but one way or another, I'm also sort of more to the point not sure how the distinction between these various summations of the same concept really influence the outcome of this appeal. Sure thing, Your Honor. When it was first before the District Court, the District Court reviewed the evidence and found that the consensus appeared to be this particular definition. And based on the context of that definition, remanded the case back so that the ALJ could further consider these two questions that the Court had put forth. What happened at the district, at the ALJ on remand, on partial remand, was that the ALJ actually recognized the definition and the context that had been given by the District Court and then decided to create a new definition that we would contend was not argued by anyone or requested by anyone and that on its face doesn't stand up to scrutiny. It's just completely unreliable. And so that's part of the reason why the district had appealed this. There's a couple of reasons. One, the definition that she came up with was something that led to incorrect findings. And is the definition that you're objecting to the one that distinguishes between what a modified curriculum is and a curriculum with accommodations? At ER 592, where the ALJ says modifying curriculum means changing what a child is required to learn over the course of their educational career. Curriculum with accommodations means changing how material is presented to the child. Is that the thing that you're objecting to? Yes or no, is that what you're objecting to? That's part of what I'm objecting to, Your Honor. She used that definition and also in 594 she said, in curriculum which is used to teach life skills and daily living skills to students with severe cognitive disabilities. What's wrong with that? Because her reasoning in creating that definition doesn't support that particular definition. In trying to come up with, trying to describe curriculum or modify curriculum as something that is just used with the most severely disabled students, she took a look at, she recognized that there was no definition of modify curriculum in the statutes or in the regulations. So she looked at the words alternative as they're described in the Code of Federal Regulations. And then did some sort of analysis where she juxtaposed or confused alternate with modified and ended up finding that because alternate assessments as they're used in the federal regulations can only be used with the most severe students, then by that token modified curriculum can only be used with the most severely disabled student and that was not the student. We all agree with that. But Irvine never said that it was using modified curriculum because this was the most severely disabled student. More importantly, it's counter to what the district was actually using. The methodology of using a curriculum that may be a year lower than what would normally correspond to a student is a perfectly acceptable teaching strategy that was even used by the private placement. The private placement was using that strategy to try to help her catch up. That's what they've said. And opposing counsel is going to say that what the school district did, and I'm doing this because I want to hear your response, is that that's not what the school district was doing. Rather than aiming to help her catch up to her age-appropriate peers, that the school district had adjusted its sights, lowered its sights basically, and was no longer aiming to get her back to that grade level. Sure. Why is that wrong? So that's wrong because the district court recognized the same argument as well. And he said, look, at the end of the day, whether you're using this to catch her up or for some other reason, the fact remains that the private school was still instructing her using a curriculum that was lower than what would normally correspond to her age. But also, this goes to one of the arguments we raised, Your Honor, in that in this particular case, the district's program was less modified. It modified the curriculum in some of the hard subjects, reading, writing, and math. But in sub-subjects such as social studies, she was in a general education classroom where they're typically developing peers in the least restrictive environment. That was not the case at the private school, which is geared towards children with disability, and where at the very beginning, she was held back one whole year across the board. And even when she was held back one whole year across the board, that private school still used grade-level materials. In some instances, like math, was several grade levels lower than that. So if you're looking at the program as to, you know, why is the private school able to use this to catch her up, actually the district's program is much better in that it was actually taking a more surgical approach, not holding her back across the board, but instead finding those discrete areas where she needed some particular help and then modifying the curriculum in those particular areas. So again, Your Honor, you know, in light of the absence of a modified curriculum definition in the actual federal regulations or other applicable law, you know, at this point, the limited guidance from the ALJ and the affirmation by the district court affirming it, it appears a modified curriculum or this strategy of maybe using lower-level grade curriculum is inappropriate for any school district to use except for the most sort of severely disabled students. And so that's why we believe it's completely wrong. I mean, the decision is also just wrong on its face because it found or it reached the conclusion that Irvine had somehow taken this 12-year-old off diploma track when she was still in elementary school, and that was just not the case. That decision had not been made. And so she tried to contrast that with Prentiss, who could give her a diploma and would give her a diploma. However, Prentiss only goes up to the eighth grade, so it's really unclear where she came up with that definition. So the whole opinion on partial remand, just completely wrong, and it creates a definition of modified curriculum that's out there that really limits public school districts' ability to use different teaching methodologies with a student. I mean, it doesn't put the same limits on private schools, but it does put it on public schools. So we just think the definition is completely wrong. And actually, Irvine actually sought to address some of these concerns. Asked for a one-day hearing in order to address any questions that the ALJ may have, and that was summarily denied that it could be submitted on the papers, and we think that that was an abuse of discretion where you ended up with an opinion that's unsupported by the underlying reasoning, but also because it's apparent to us now that the ALJ had some questions, had maybe some thoughts that were different than what the district court had put down, and we think that a one-day hearing would have allowed the district to confirm, one, Prentice is not a high scorer, doesn't offer diplomas, two, why it is that the definition put forward by the district court may sense and why in this particular case there was no reason to find that the district couldn't use this technique of using a grade-level curriculum that was lower in order to, as the court has said, catch the student up, address areas of need or deficit, or otherwise help her attain her educational benefit in this case. And I'm more than happy to answer any questions that, any additional questions the court may have on that. In addition to that, we also appealed the attorney's fees decision. It's pretty straightforward and accepted that, pursuant to a Geary, a degree of success applies to these types of cases that the court should take into consideration, not only with the relief obtained, but also the number of issues that are at issue in this particular case. The district court, in their opinion, recognized this, said it is one of the factors, but then just did not apply it. Obviously, this is not going to be an issue if the district's or the Irvine's appeal is granted, because attorney's fees would be denied then, but it's an important issue that we wanted to highlight for the court. It doesn't appear there are any other questions at this point, but you have a couple of minutes reserved. Thank you. Thank you. We'll hear from opposing counsel, please. Good morning, Your Honors. May it please the Court, Timothy Adams for the appellee student, and I'll just refer to a student if that's okay. Sure. You can move those microphones up so you don't have to bend over. Okay. That might be easier, whatever works. Perfect. So this case has been a distraction, I think, for many of the courts, Judge Carter in particular. The Irvine Unified School District had said very specifically that Prentiss and the private school was, and what they were providing the student was somehow important. It's really Prentiss, as defined by the ALJ, is just a remedy. So once the student is able to prove that the school district didn't offer a free appropriate public education, a program that's reasonably calculated to confer an educational benefit to student, Prentiss was the remedy that was ordered. So whether Prentiss offered or didn't offer, provided or didn't provide a accommodated, modified, adjusted, altered curriculum, really makes no difference. Well, something makes a difference because if the alternative placement were not appropriate,  I mean, if the parents chose, let's say, I don't know, some weird incantation in lieu of education, then it wouldn't be reimbursable. So it still has to be appropriate. Well, actually, Your Honor, it needs to be a reasonable choice. If you look at the Florence County School District case versus Cardi Supreme Court case, private schools are not required to comply with the same public schools. No, no, they're not. But a private school placement, I'm looking at CB versus Garden Grove, it still has to be an educational instruction specially designed to meet the unique needs of the child and so forth. It can't be any remedy. It can't be any remedy. So it is proper. I guess what I'm suggesting is that it's proper for the ALJ to determine whether Prentiss meets this standard that would give the support services and so on and so forth. So some inquiry is permissible. And that's correct, Your Honor. And the good news is that Prentiss was an appropriate placement. In fact, the administrative law judge said it specifically. And that's going to lead into our next set of oral arguments. I was going to say, we're going to talk about that in a minute. Right, I know. Understood. If you could get back to this. So your point is that we should be focusing on this appeal on whether or not the Irvine did or did not offer a favor. That is correct, Your Honor. So opposing counsel's point is that there was this, we've gone around and around about what's the correct definition for when a curriculum is going to be modified. But those seem to me to be all sort of paraphrasing the same idea. His other point is that there's an opinion out there that's going to cause problems because for a student who is struggling, it may be appropriate, I'm not using that as a term of art, for an educator to use a third-grade math book for a child in fourth grade if the idea is to catch her up, you know, to help her catch up. And his concern is that the decision doesn't allow for that. It does, and I think it's very flexible. In fact, I think my friend, opposing counsel, had said very specifically that somehow Judge Carter had defined modified versus comedy. He never defined it. In fact, he gave VA a lot of discretion to make that determination because there isn't a lot of, there's no case law on it. I agree that Judge Carter didn't make the definition. Okay. What he did is he observed, his order includes an observation that an expert had a certain definition. Correct. And I also don't think that he directed that a particular definition be used on remand. But my question is, opposing counsel argues that however that sausage was made, that a definition has emerged that's going to be difficult for school districts going forward because by his read it doesn't allow school districts to, as I said, sort of drop back, to use a lower-grade text or curriculum in order to help a child catch up. But that is the precise definition that Irvine's own witnesses used. And I was trial counsel, Your Honors. I questioned those witnesses, and they defined it very similarly, including, and our experts, Dr. Guitti and Dr. Weiss, defined it very similarly. Now you're saying it. Do you mean modified curriculum, or do you mean accommodations to help a child catch up? We're talking about accommodations, Your Honor, versus modifications. Modifications being what? I know what they are, but you're not hearing my question. Okay. So you keep saying it. They defined it. Are you referring now to modified curriculum? My apologies. That's okay. Both. They defined both. So modified, meaning what was provided in terms of curriculum, and accommodated, meaning how that was going to be presented to the student. You're not answering my question. Okay. What I'm really trying to get at, and I'm sure it's because I'm not asking a good question. I understand that, and the briefing goes on about this at length, and we've all read the briefs, right? But going forward, I'm concerned as to whether there's any traction to this argument. We have to be very concerned about all the other kids out there. And so I'm concerned that districts who are working really hard, this is a very tough task that they've got, are perhaps left with a direction that is less than clear. So your position a minute ago, I think you started to answer my question. You said you don't think the ruling does that. I don't think it's a rule. And that, and my question is, does it prevent a school district from using, as an accommodation, a lower-grade, we'll say, math text to help a student catch up? As long as that student isn't eventually taken off the diploma track, which is what was happening, I think. That would be the modified curriculum. Right. That would be taking a student so much away from the core curriculum that she is falling further and further behind year by year. And this is precisely what we argued in this case, is that parents didn't even know they were presented with, we're going to do this thing, which was modify the curriculum. The district called it accommodations, which it wasn't, continued to modify, and student continued to fall further and further behind. That's the concern. What I think counsel is going to say is that the parents signed off on that. And I think from the briefing, it's clear to me the parents now argue or argued below, but they didn't recognize that she's being taken off of diploma track. Correct. They didn't understand that that's what it meant. So if I'm a parent and I'm told, we're going to do this thing that makes it easier for your child to access the curriculum, but at the same time it's not explained that my child isn't going to reach the same level as her peers in order to get a diploma in time, I'm going to have a very different concern. And that concern is going to be, let's step back for a second. Let's have a discussion as to why we're doing this. Are there alternatives to prevent that student from being taken off that track? Okay. So is the problem at core level that parents didn't have the benefit of all of the briefing that we've read that explain this distinction between a modified curriculum and steps being taken to help a child access the curriculum? So your position is that distinction wasn't made clear. It wasn't made clear. In fact, I don't think Irvine witnesses even understood the distinction between the two. Okay. So be that as it may, now we're getting back to my question, which is going forward, is there something in this order that needs to be clarified so districts going forward will recognize that? I think it would be helpful for school districts to understand that modification is moving a student so far behind the core curriculum that it impacts their ability to obtain a high school diploma, which is precisely what the ALJ had decided. So in your view, going back to my hypothetical, I know I keep trying to get you back there, but it would be acceptable under some circumstances to use the lower grade level math textbook if the idea is to accommodate and help a child catch up, but not if they're modifying. At least that wouldn't be done sub salientio. Not significantly adjusting the curriculum on a long-term basis. What's the case that we should look at that most clearly sort of nails this distinction that you're making? So there isn't a case on point, Your Honor. This is part of the concern outside of this case that we're discussing today. But, you know, I can't point to a definition. This is why the ALJ, this is why Judge- Your briefing says that too. I understand there's no briefing in the, sorry, case law in the Ninth Circuit. Is there no case law anywhere that nails this down? We have not been able to locate a case in particular that defines that outside of common definitions for accommodations versus modifications. Hence, our ALJ and her decision. And hence, the Judge Carter's giving so much discretion to the ALJ to make, to decide what she ultimately decided, which is, it's a very logical definition, Your Honor. You've answered my question. Thank you. Thank you. Thank you. So, ultimately, with respect to, and I'll move on. I think I've answered this question, so I'll move on to the attorney's fees. You know, the district was found to have denied FAPE on every single one of the IEPs, the educational plans that were at issue in this due process case, including their single issue. So, their single issue is related to a June 2018 IEP. They had one single issue. The judge, the ALJ, found that that IEP did not provide a free public education. So, from our perspective, from students' perspective, student prevailed, did, in fact, prevail, as the judge said, on the grab-a-min by demonstrating that every single one of these IEPs were not FAPE. Given that, it should have no bearing, regardless of, you know, whether we won, you know, a sub-issue or didn't win a sub-issue. The judges very commonly will, ALJs, will break issues into sub-issues to make it easier for them to analyze and write their decisions. But if you look at the decision as a whole, every single one of those IEPs were denial of FAPE. As a result of that, it should have no impact on our ability to pursue and collect attorney's fees, as ordered by Judge Carter. Questions, Judge Graber? I don't think we have other questions, Counsel. Thank you, Your Honor. Thank you very much for your presentation. We'll hear from the opposing counsel, please. Thank you. On the first issue regarding the diploma track, at the time of the hearing, the district had not made any decision as to whether this elementary school student would continue on the diploma track. Also, there was no evidence presented by Prentiss that, through their education, she would receive a diploma at that particular... Setting aside Prentiss for a minute, because I do think opposing counsel has a valid point. We're supposed to be looking at Irvine and whether Irvine, for purposes of this argument, provided a FAPE, right? So my understanding is the record includes, I think it was testimony from one of the parents, I believe it was a mother, asking about this, about how the student had regressed in her academic progress, and an educator responding, well, you shouldn't be looking at this grade-level stuff. You should be looking at these other goals that we've set for her, that would have been consistent with and supported the finding that this child was not on diploma track any longer. That is, that she was using a modified curriculum.  But I can say that her educational program was not just modified curriculum. One of the things that really stands out as to why this is a really difficult case, or why the findings that the ALJ reached are erroneous, is because she also found in the original decision that the district provided appropriate accommodations. So it wasn't just, here's a modified curriculum, have at it, but it was complemented with accommodations as well. It was a lot more surgical than the program that she was provided at Prentice. You know, this characterization of just something very straightforward, it was just modified curriculum, that's not the decision. If you look at the findings as to each IEP, these IEPs were challenged on 10 or 12 different grounds, and the district won primarily on a lot of those grounds. 50 out of 68 submissions. Why does that matter? Let's say you have an injury and a tort claim for $100,000, and you win your $100,000, and you had several ideas about why you should win, haven't you still won? I mean, it just seems, I don't know, I guess I don't understand why we should be counting sub-issues. Sure, because it's a challenge to that particular program, and overwhelmingly the ALJ found that the program was legally compliant. The big issue here was whether it offered modified curriculum, and that's the string that runs across the IEPs that were challenged in this particular case. And the district's contention is, look, you can't find that our program doesn't provide her some educational benefits, because that was Judge Carter's wording. He's like, you know, are you saying that the district's program provided no benefit? And in light of the overwhelming challenges to the IEPs and how the district overwhelmingly won those, that can't be the case. And so the only sort of issue that stands out here is modified curriculum. And, again, why is it that private schools can teach students using a curriculum that's lower than what otherwise corresponds to their age, but the districts are sort of tied to this new definition that this has to be reserved for the most severely disabled? It looks like our questions have been answered. Thank you. Thank you. We'll take that case under advisement and give you a minute to switch to the other parts of your notebooks or do whatever you have to do to take up the next appeal.
judges: GRABER, CHRISTEN, OWENS